2011 Ark. App. 706

**Diana LANCASTER, Appellant**

v.

**RED ROBIN INTERNATIONAL, INC., Steve Reiger, Jason Riddle, Matthew Natividad, and Kayla Neitzel, Appellees.**

**No. CA 11–543.**

Court of Appeals of Arkansas.

Nov. 16, 2011.

Harry E. McDermott, III, Fayetteville, for appellant.

Peter G. Kumpe, Bonnie Joan Johnson and Jess Askew, III, Little Rock, for appellee.

DAVID M. GLOVER, Judge.

Appellant Diana Lancaster worked as a bartender on an at-will basis for appellee Red Robin International, Inc. (a restaurant). After Red Robin transferred her from the position of bartender to server, she sued her employer, appellee Steve Reiger (Red Robin's general manager), appellee Jason Riddle (Red Robin's service manager), appellee Matthew Natividad (a co-worker), and appellee Kayla Neitzel (a co-worker) for slander in the Benton County Circuit Court. The trial court granted summary judgment to all appellees. It also struck two of appellant's pleadings and imposed sanctions under Arkansas Rule of Civil Procedure 11 against appellant and her attorney, Harry McDermott, in favor of Natividad and Neitzel,

and ordered McDermott to pay appellees $1000 in attorney's fees because of the way he handled a discovery dispute. Appellant argues that the trial court erred in granting summary judgment to all appellees. She also alleges that it abused its discretion in striking her amended complaint and second amended complaint; in awarding attorney's fees to Natividad and Neitzel; and in ordering her attorney to pay appellees $1000 in attorney's fees. We cannot address the propriety of the circuit court's sanctions against McDermott because appellant's notice of appeal did not indicate that McDermott was also taking an appeal from the orders sanctioning him, and he did not file a notice of appeal in his own right. *See Arkansas Dep't of Human Servs. v. Shipman,* 25 Ark.App. 247, 756 S.W.2d 930 (1988); Ark. R.App. P.-Civ. 3(e) (2011). Otherwise, we affirm on all issues.

Appellant sued Red Robin, Reiger, and Riddle for slander in January 2008. She alleged that Reiger told Riddle that appellant was "slipping beers to customers" while working as a bartender; that a few days later, Reiger informed her that she would work as a server while he investigated the matter; and that another employee told her that Reiger and Riddle were telling Red Robin's staff that she was selling drugs at the restaurant, so that a good friend of theirs could be hired as bartender in her place. She denied slipping beers or selling drugs and alleged that as a result of their slander, her hours had been reduced, causing her to lose wages, insurance, and vacation pay, and that she was unable to obtain employment as a bartender elsewhere.

The discovery disputes began in April 2008, when appellant filed a motion to compel, arguing that appellees' answers to her interrogatories and requests for production of documents were inadequate.

Discovery did not proceed smoothly, and the record is replete with examples of the discord between McDermott and appellees' attorneys. The court held a number of discovery hearings. On June 16, 2008, the court entered an order denying appellant's motions to compel and awarding $1000 to appellees from McDermott because he did not confer in writing with appellees' attorneys before filing the motions. It noted that Red Robin had filed supplemental responses to the discovery requests that were the subject of the motions to compel and found those responses to be appropriate, but directed Red Robin to provide an unqualified verification of all discovery responses previously submitted. The next day, appellant filed an amended request for entry upon the premises to inspect and copy records and to film inside the restaurant. Red Robin objected.

In her deposition taken in May 2008, appellant acknowledged that Reiger had moved her from bartender to server because of the beer incident, not the drug allegations. She stated that she had incurred damages in lost wages, vacation time, and insurance eligibility because of her transfer to server, but admitted that she did not actually know the difference between what she had earned in those positions. Appellant took Kayla Neitzel's deposition in June 2008. Neitzel testified that she had told Reiger that she had heard multiple employees talk about purchasing drugs from appellant. Appellant deposed Nick Pitzel, an employee of Red Robin, who testified that, upon questioning by Reiger, he had stated that he had heard from Natividad that appellant sold drugs. Appellant took the deposition of Natividad on June 3, 2008. Natividad testified that appellant had sold Xanax and hydrocodone to a certain employee on numerous occasions between October 2007 and January 2008. Soon after this deposition, Red Robin terminated appellant. On June 4, 2008,

appellant filed an amended complaint naming Natividad as a defendant.

Red Robin moved to strike portions of appellant's amended complaint, stating that appellant had deposed Natividad the day before she added him as a defendant; that his testimony was damaging to appellant's case; and that paragraphs 11 through 15 contained redundant, immaterial, impertinent, or scandalous matters. Natividad also moved to dismiss; in the alternative, he asked the court to strike appellant's amended complaint for failure to state a claim. He further argued that any statements that he had made to his employer during the course of their investigation were privileged.

Appellant filed a second amended complaint against Red Robin, Reiger, Riddle, and Natividad in July 2008. Natividad moved to dismiss or, in the alternative, strike that complaint. In response, appellant made extremely derogatory accusations against Natividad. Appellant filed another motion to compel because Red Robin had refused to allow her to film the inside of the restaurant. Red Robin argued that it had produced or made available for inspection all documents responsive to appellant's discovery requests; although six to seven boxes of documents had been available for weeks for appellant to inspect, she had not done so. It also stated that McDermott had entered the restaurant on one occasion without notice and had asked nonmanagement employees to allow him to inspect its employee work logs.

Red Robin moved for sanctions under Arkansas Rule of Civil Procedure 11, alleging that, on the day after appellant deposed Natividad, she amended her pleadings to add him as a named defendant, and that the allegations contained within several paragraphs of appellant's amended complaint and her second amended complaint

were included to harass the parties, intimidate prospective witnesses, or retaliate against a witness who had testified adversely to appellant's interest.

In her second deposition (taken in August 2008), appellant admitted that she had sued Natividad because of his statements about her in his deposition and blamed her termination on the statements. She said that she had a hard time finding another job but admitted that she was hired by Mimi's Café three days later; that no one outside of Red Robin believed that she would sell drugs; and that she did not know whether any business, other than Red Robin, knew of any statement by Natividad about her and drug sales.

The circuit court entered an order striking appellant's amended complaint and second amended complaint on August 18, 2008, and gave her ten days within which to replead. Neitzel moved to dismiss the third amended complaint, which had added her as a defendant, because appellant's only claim against her was based on the written statement, which was privileged, that she had provided to Red Robin during the investigation.

Appellant filed her fourth amended complaint against Reiger, Riddle, Red Robin, Natividad, and Neitzel. Natividad and Neitzel moved to dismiss. Red Robin, Reiger, and Riddle moved for summary judgment. Red Robin argued that appellant had produced no evidence that any allegedly defamatory statements had proximately caused her any damages and that any such statements were subject to a qualified privilege. In response, appellant filed another affidavit in which she was more specific about lost wages and benefits.

Natividad moved for Rule 11 sanctions, alleging that appellant would not have sued him if he had not given sworn testimony in his deposition, and citing testimony from appellant's deposition, in which she admitted that she had sued him because of his testimony. He stated that, on two separate occasions, McDermott had told his attorney that if he were to change his testimony, appellant would dismiss him as a defendant; that his attorney had informed McDermott that he intended to move for Rule 11 sanctions if McDermott did not withdraw the complaint against Natividad; and that nevertheless, appellant filed second, third, and fourth amended complaints. Natividad supplemented his motion for sanctions, alleging that, during his deposition, McDermott had placed him in the position of having to refuse to answer certain questions or risk self-incrimination, even though he was not represented by counsel at that time, and that McDermott had refused to let him take a break to contact an attorney or even to use the restroom. He asked the court to dismiss the action against him and for attorney's fees and costs. Natividad also moved for summary judgment. He filed a copy of appellant's deposition, in which she admitted that she did not believe that he had anything to do with her being transferred from bartender to server.

On March 11, 2009, the circuit court entered an order granting summary judgment to Red Robin, Reiger, and Riddle because there were no genuine issues of material fact as to their affirmative defense of qualified privilege or as to damages. On April 9, 2009, it granted summary judgment to Natividad and Neitzel, and granted Natividad's motion for sanctions. The court found that a qualified privilege applied to any statements made by Natividad and Neitzel to their employer and that there was a lack of proof of causation and damages. It stated:

> As to the Motion for Rule 11 Sanctions, the Court finds that the entire circumstances surrounding the filing of this case against both of these defendants to

be suspect. Due to the inflammatory and scurrilous nature of the filings against these defendants, along with the lack of a basis for the plaintiff's claims, the Court finds that Rule 11 Sanctions are appropriate.

The court awarded attorney's fees of $4500 to Natividad and $2500 to Neitzel, to be paid by appellant and McDermott.

Appellant raises the following points on appeal: (1) that the circuit court erred in granting summary judgment to appellees; (2) that the circuit court abused its discretion in striking her amended complaint and second amended complaint and granting Natividad and Neitzel Rule 11 sanctions; and (3) that the circuit court abused its discretion in directing McDermott to pay appellees' attorney $1000 for discovery abuse and in finding Red Robin's responses to discovery to be appropriate. As discussed above, the issues concerning McDermott are not properly before us for review.

■ Summary judgment may be granted by a trial court only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, clearly show that there are no genuine issues of material fact to be litigated and the party is entitled to judgment as a matter of law. *Lee v. Martindale*, 103 Ark.App. 36, 286 S.W.3d 169 (2008). When the movant makes a prima facie showing of entitlement, the respondent must meet proof with proof by showing a genuine issue as to a material fact. *Dodson v. Allstate Ins. Co.*, 365 Ark. 458, 231 S.W.3d 711 (2006). When a party cannot present proof on an essential element of a claim, the party moving for summary judgment is entitled to judgment as a matter of law. *Caplener v. Bluebonnet Milling Co.*, 322 Ark. 751, 911 S.W.2d 586 (1995). On appeal, we need only decide if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Lee, supra.* In making this decision, we view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

■ The following elements must be proven to support a claim of defamation, whether it be by the spoken word (slander) or the written word (libel): (1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages. *Dodson, supra.* A viable action for defamation turns on whether the communication or publication tends or is reasonably calculated to cause harm to another's reputation. *Roeben v. BG Excelsior Ltd. P'ship*, 2009 Ark. App. 646, 344 S.W.3d 93. A plaintiff in a defamation case must prove actual damage to his reputation, but the showing of harm is slight. *Id.* A plaintiff must prove that defamatory statements have been communicated to others and that the statements have detrimentally affected those relations. *Id.* The law does not require proof of actual out-of-pocket expenses. *Id.*

■ A qualified privilege is recognized in many cases where the publisher and the recipient have a common interest or duty, and the communication is of a kind reasonably calculated to protect or further it. *Roeben, supra; see also Navorro–Monzo v. Hughes*, 297 Ark. 444, 763 S.W.2d 635 (1989); *Addington v. Wal–Mart Stores, Inc.*, 81 Ark.App. 441, 105 S.W.3d 369 (2003). It is a condition and qualification of the privilege that the utterance must be exercised in a reasonable manner and for a proper purpose. *Roe-*

*ben, supra.* Therefore, if the person making the statement steps outside the bounds of the privilege or abuses the privilege, the qualified privilege is lost. *Id.* The immunity does not extend to a publication of irrelevant defamatory statements that have no relation to the interest entitled to protection. *Id.* The qualified privilege is lost if the publication is not made for the purpose of furthering the common interest. *Id.* The privilege does not protect a defendant from publication to persons other than those whose hearing is reasonably believed to be necessary or useful for the furtherance of that interest. *Dillard Dep't Stores, Inc. v. Felton,* 276 Ark. 304, 634 S.W.2d 135 (1982). The privilege is lost if abused by excessive publication, where a statement is made with malice, or where a statement is made with a lack of grounds for belief in its truthfulness. *See Addington, supra.*

The circuit court was correct in ruling that a qualified privilege applied to Reiger's and Riddle's statements made to each other and to Red Robin employees, and to Natividad's and Neitzel's statements to them, in connection with their investigation. There was no evidence that they made the statements in an unreasonable manner or for an improper purpose. Clearly, Red Robin and its managers had a legitimate interest in determining whether appellant was giving away beer or selling drugs on the premises. Natividad's alleged statement to another employee that he had heard that appellant was dealing drugs at work is of no consequence, because appellant offered no evidence of any damage he had caused her. Accordingly, we affirm the grant of summary judgment to appellees.

We also hold that the circuit court did not abuse its discretion in striking the amended and second amended complaints or in imposing sanctions against appellant. Arkansas Rule of Civil Procedure 12(f) (2011) provides that a trial court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. A trial court's decision regarding the striking of a pleading will not be reversed in the absence of an abuse of discretion. *Israel v. Oskey,* 92 Ark.App. 192, 212 S.W.3d 45 (2005). The primary purpose of Rule 11 sanctions is to deter future litigation abuse. *Elder v. Mark Ford & Assocs.,* 103 Ark.App. 302, 288 S.W.3d 702 (2008). When a circuit court determines that a violation of Rule 11 has occurred because an attorney has signed pleadings in violation of the rule, the rule makes sanctions mandatory. *Parker v. Perry,* 355 Ark. 97, 131 S.W.3d 338 (2003). However, the circuit court has wide discretion in determining whether a violation of Rule 11 occurred and what an appropriate sanction should be. *Id.* An appropriate sanction may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee. *Id.* The imposition of sanctions pursuant to Rule 11 is a serious matter to be handled with circumspection, and the trial court's decision is due substantial deference. *Id.* We review a trial court's determination of whether a violation of Rule 11 occurred under an abuse-of-discretion standard. *Id.*

It is obvious that appellant sued Natividad and Neitzel because of the privileged statements they gave to Red Robin during its investigation or in their depositions that implicated her in selling drugs. She could point to no actual damage that they had caused her. In the complaints, as well as at the hearings, appellant's attorney used extremely inflammatory language about Natividad that bore scant relation to the substance of her claim for slander. We cannot say that the circuit court

abused its discretion and affirm on this issue.

The circuit court also did not abuse its discretion in finding that appellees' responses to discovery requests were appropriate. The goal of discovery is to permit a litigant to obtain whatever information he may need to prepare adequately for issues that may develop without imposing an onerous burden on his adversary. *Parker v. So. Farm Bureau Cas. Ins. Co.*, 326 Ark. 1073, 935 S.W.2d 556 (1996). The trial court has wide discretion in matters pertaining to discovery and we will not reverse a trial court's decision absent an abuse of discretion. *Id.*

The circuit court found that McDermott failed to comply with Arkansas Rule of Civil Procedure 37 by filing motions to compel without first conferring with appellees' counsel. At the hearing on June 4, 2008, the circuit court gave McDermott the opportunity to explain every discovery problem that could not have been resolved with a good-faith effort. It is apparent that the problems could have been resolved by conferring in writing with appellees' counsel; that McDermott failed to take advantage of opportunities presented to him to obtain the information; or that appellees had already provided him with the only information they had. In fact, McDermott admitted that Red Robin had not done anything wrong. As the circuit court noted, Arkansas Rule of Civil Procedure 26(e) (2011) provides that a party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. *See Battles v. Morehead*, 103 Ark.App. 283, 288 S.W.3d 693 (2008). There was never any doubt that the circuit court would hold appellees to this rule. In fact, the court even told McDermott at the November 4, 2008 hearing that if it became apparent during trial that pictures or a video of the restaurant was necessary, it would stop the trial and allow him to obtain them. Accordingly, we find no abuse of the circuit court's discretion and affirm on this issue.

Affirmed.

ROBBINS and WYNNE, JJ., agree.